NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOSE S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, R.S., C.S., D.S., *Appellees*.

No. 1 CA-JV 16-0296
FILED 1-31-2017

Appeal from the Superior Court in Maricopa County
No. JD27835
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

COUNSEL

John L. Popilek PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Patricia K. Norris joined.

---

**M c M U R D I E**, Judge:

¶1        Jose S. ("Father") appeals the superior court's termination of his parental rights to his three children. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Father and Hannah S. ("Mother") are the biological parents of R.S., born in November 2009, C.S., born in November 2009, and D.S., born in May 2013, (the "Children").[1] On February 11, 2014, the Arizona Department of Child Safety ("DCS") took temporary physical custody of the Children after Father called the police about someone standing on his balcony and pointing a gun at him and his family. Father's call was based on a hallucination caused by his misuse of psychiatric medications. Soon thereafter, DCS visited Father's apartment and found the Children in a state of poor hygiene, living in unsanitary conditions. DCS initiated dependency proceedings as to both Father and Mother, alleging the Children dependent due to abuse and neglect.[2] The Children were adjudicated dependent in July 2014. In October 2015, DCS filed a motion to terminate the parent-child relationship between the Children and both parents. As to Father, DCS alleged two grounds for severance: (1) mental illness and mental deficiency, and (2) the Children's length of time in an out-of-home placement.

¶3        At trial, Father testified he had been receiving psychiatric medication monitoring services since 2006, when the superior court ordered Father to participate in psychiatric treatment due to his mental

---

[1]        Mother and Father are the biological parents of three other children. Their parental rights to these children were terminated prior to this case.

[2]        Although Mother is not a party to this appeal, it should be noted that Mother was diagnosed with schizoaffective disorder with bipolar tendencies and has been hospitalized due to her mental health condition several times since approximately 2001.

health instability, caused by non-compliance with prescribed treatment. In 2009, Father's diagnoses included substance induced psychotic hallucinations. Since 2010, Father's diagnoses included a schizoaffective disorder unspecified, bipolar disorder (severe, with psychotic features), and borderline intellectual functioning. Unspecified substance use disorder was ruled out in January 2015. Father uses medications prescribed for anxiety, audio hallucinations, depression, and insomnia.

**¶4**　　　　After the trial, the superior court terminated Father's parental rights on both grounds. The court also found the severance was in the Children's best interests.[3] Father timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1) and -2101(A) (2016).[4]

## DISCUSSION

**¶5**　　　　A parent-child relationship may be terminated when a court finds at least one of the statutory grounds for severance and determines that severance is in the child's best interests. A.R.S. § 8-533(B); *Mary Lou C. v. ADES*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). We review a court's severance determination for an abuse of discretion, adopting its findings of fact unless clearly erroneous. *Id.* A court's disposition will be upheld unless there is no reasonable evidence to sustain it. *Id.* We do not reweigh the evidence on appeal. *Jesus M. v. ADES*, 203 Ariz. 278, 282, ¶ 12 (App. 2002).

**¶6**　　　　Father argues DCS failed to prove any ground for severance by clear and convincing evidence because Dr. Mastikian's psychological evaluation overly relied upon the belief Father used illegal substances. Father contends no clear and convincing evidence existed without Dr. Mastikian's expert report.

**¶7**　　　　Under A.R.S. § 8-533(B)(8)(c), a parent's rights may be terminated when a child has been placed out of home:

---

[3]　　　Father does not challenge the superior court's best interests finding on appeal. Father has therefore waived any claim regarding that finding. *See State v. Carver*, 160 Ariz. 167, 175 (1989) ("Failure to argue a claim usually constitutes abandonment and waiver of that claim.").

[4]　　　Absent material revision after the relevant date, we cite a statute's current version.

for a cumulative total period of fifteen months or longer[,] . . . the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

**A.      Time in an Out-of-Home Placement**.

**¶8**          At trial, R.W., a supervisor and a case worker for the Children at DCS, testified the Children had been in DCS's care for twenty-nine months. Father did not present any controverting evidence at the severance hearing or on appeal.

**B.      Inability to Remedy Circumstances Resulting in Placement.**

**¶9**          The court considers the circumstances at the time of the severance trial in determining whether the conditions resulting in a child's removal have been cured. *Marina P. v. ADES*, 214 Ariz. 326, 330, ¶ 22 (App. 2007). The court must find the parent is "unable to remedy the circumstances that cause[d] the child to be in an out-of-home placement . . . ." A.R.S. § 8-533(B)(8)(c). As part of its analysis, the court must take into account the reunification services provided by DCS. *See Jordan C. v. ADES*, 223 Ariz. 86, 93, ¶ 17 (App. 2009).

**¶10**          As grounds for dependency, DCS alleged Father failed to address his mental health issues and provide his Children with sufficient food, personal hygiene, and a clean and safe environment. Subsequently, DCS provided Father with services designed to assist him with mental health issues, such as a psychological evaluation, psychiatric treatment and monitoring, therapeutic visitations, and transportation to these and other services.

**¶11**          After the psychological evaluation, Dr. Mastikian concluded the Children would be at risk in Father's care. Although Father argues Dr. Mastikian overly relied on Father's distant history of illegal substance abuse, in a section unrelated to substance abuse Dr. Mastikian stated: "[I]t is evident that [Father] is unable to independently tend to his own mental health treatment, which would place his children in substantial harm in the event that he decides to discontinue his medications again."

**¶12**          Moreover, Father never fully engaged in counseling, and testified he believed counseling would not help him reunite with his

Children. R.W., a case worker for the Children at DCS, was also concerned about Father's compliance with his medication regimen. She testified she could observe when Father had not taken his medications.

¶13 DCS also provided Father with other services: a TASC assessment, TERROS drug treatment, a parent aide provided by three independent agencies, a case aide, and supervised visitations. Unfortunately, Father did not complete any of these services. Father also tested positive for methamphetamine during the proceedings.

¶14 Additionally, R.W. testified Father failed to control Mother's inappropriate behavior during supervised visitations, such as cussing at the Children, displaying her breasts to the Children, pretending to shoot herself in the head, and behaving aggressively toward the parent aide. Father minimized the significance of Mother's behavior, sat passively, and let the Children attempt to control Mother. Father failed to protect the Children from Mother's psychotic outbursts.

## C.    Likelihood of Inability to Exercise Proper and Effective Care.

¶15 In addition to finding Father unable to remedy the circumstances resulting in the out-of-home placement, the court must also find DCS proved, by clear and convincing evidence, Father would be unable to properly parent in the near future. *See Jordan C.*, 223 Ariz. at 98, ¶ 36.

¶16 The superior court found Dr. Mastikian's medical opinion persuasive and without contradiction in its conclusion that Father was not capable of exercising proper and effective parental care and control in the near future. We do not reweigh evidence on appeal. *Jesus M.*, 203 Ariz. at 282, ¶ 12.

¶17 Because we accept the court's findings of fact unless clearly erroneous, we find the court did not err in severing Father's rights to the Children. *Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 576 (App. 1994). When clear and convincing evidence supports at least one of the grounds for severance, we need not address the other reasons for severance. *Jesus M.*, 203 Ariz. at 280, ¶ 3.

## CONCLUSION

¶18      For the foregoing reasons, we affirm the court's severance of Father's rights to R.S., C.S., and D.S.



AMY M. WOOD • Clerk of the Court
FILED:  AA